UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

ELLEN O.[1],

          Plaintiff,

   v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

Case No. 1:21-cv-01577-YY

OPINION AND ORDER

YOU, Magistrate Judge.

     Plaintiff  Ellen O. seeks judicial review of the final decision by the Commissioner of

Social Security ("Commissioner") denying plaintiff's application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, and

Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C.

§§ 1381-1383f. This court has jurisdiction to review the Commissioner's final decision pursuant

to 42 U.S.C. § 405(g). For the reasons set forth below, that decision is reversed and remanded

for the immediate award of benefits.

/ / /

/ / /

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of
plaintiff's last name.

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB on November 15, 2012, and SSI on November 20, 2012, both alleging a disability onset date of August 13, 2012. Tr. 55, 56. Plaintiff's date last insured was December 31, 2016. Tr. 57. This is the third time this case is before the district court. Plaintiff's first hearing before an Administrative Law Judge ("ALJ") took place on November 5, 2014. Tr. 25-54. The Appeals Council declined plaintiff's request for review, and plaintiff sought review with this court. On September 21, 2017, this court remanded the matter for further proceedings, including additional consideration of plaintiff's allegation of fibromyalgia. Tr. 382-94.

Plaintiff's second hearing was before ALJ Katherine Weatherly on November 13, 2018. Tr. 331-58. In a decision dated January 4, 2019, the ALJ again determined that plaintiff was not disabled. Tr. 309-22. On April 21, 2020, this court remanded the matter for further proceedings, with instructions for the ALJ to "re-evaluate the medical opinions of Dr. Heidinger and FNP Joslin, with full consideration of plaintiff's verified fibromyalgia condition and with regard to the consistency of the record as a whole," and to "re-evaluate plaintiff's subjective symptom allegations." Tr. 780-81. Additionally, this court noted that "plaintiff will have the opportunity to present a theory on how her combination of impairments meets or equals any of the listings, if she chooses to do so." Tr. 781.

ALJ Weatherly then held a third hearing on March 8, 2021, where medical expert Dr. Jack LeBeau and vocational expert Ann Jones testified. Tr. 705-30. In a decision dated April 9, 2021, the ALJ again determined that plaintiff was not disabled within the meaning of the Act. Tr. 666-82. Plaintiff seeks judicial review by this court.

/ / /

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 13, 2012. Tr. 672. At step two, the ALJ determined plaintiff

suffered from the following severe impairments: osteoporosis, migraines, status post L4-5 laminectomy, history of compression fractures L2-3, osteoarthritis and degenerative disc disease lumbar spine and cervical spine with no significant stenosis or spinal cord compression, and fibromyalgia. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 673. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined plaintiff has the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with no limits on sitting, but the claimant is able to stand only one hour at a time for up to three hours in an 8-hour workday. The claimant can tolerate occasional ramps and stairs but no ladders, ropes, or scaffolds. The claimant can do occasional balancing, stooping, kneeling, crouching, and crawling. The claimant needs to avoid workplace hazards such as heights. Walking is limited to 30 minutes at a time four times a day for up to 2 hours in an 8-hour workday." Tr. 674.

At step four, the ALJ found plaintiff was capable of performing past relevant work as an administrative clerk (DOT #219.362-010, SVP 4, light exertional level) and that this work does not require the performance of work-related activities precluded by the claimant's RFC. Tr. 681. Thus, the ALJ concluded plaintiff was not disabled.

## DISCUSSION

Plaintiff argues that the ALJ made four errors: (1) failing to find her impairments met listing 14.09D at step three; (2) improperly rejecting her symptom testimony; (3) improperly rejecting the medical opinions of Dr. Wendell Heidinger and family nurse practitioner Stephen Joslin; and (4) not substantiating the step four finding with substantial evidence.

/ / /

4 – OPINION AND ORDER

## I.     Step Three

At step three, the ALJ considers whether a claimant's impairment or combination of impairments meets or equals the criteria for a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the impairment is *per se* disabling and the ALJ must award benefits.

"[Fibromyalgia] cannot meet a listing in appendix 1 because [fibromyalgia] is not a listed impairment." SSR 12–2p 2012, *available at* 2012 WL 3017612, at *43644; *see also Britton v. Colvin*, 787 F.3d 1011, 1012 (9th Cir. 2015) (observing fibromyalgia is not a listed impairment). Therefore, the ALJ instead must "determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." SSR 12-2p, *available at* 2012 WL 3017612, at *43644.

Plaintiff contends that the ALJ erred at step three in failing to find that her fibromyalgia equaled listing 14.09D for inflammatory arthritis. Plaintiff argues that her fibromyalgia "in combination with her other medically determinable impairments of lumbar compression fractures, degenerative disc disease and osteoarthritis of the lumbar and cervical spines, headaches, chronic pain disorder, and right hip bursitis" are "medically equivalent to each diagnostic element of Listing 14.09D." Pl. Br. 12, ECF 16.

To meet listing 14.09D, one must have the conditions of inflammatory arthritis "[a]s described in 14.00D6 . . . [w]ith":

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>      1. Limitation of activities of daily living.
>      2. Limitation in maintaining social functioning.
>      3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Listing 14.09D. A "marked" limitation "means that the signs and symptoms of your immune

system disorder interfere seriously with your ability to function." Listing 14.00I.5. Although it is

not necessary to use a scale, "marked" "would be the fourth point on a five-point scale consisting

of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation."

*Id.* A marked limitation may exist "when several activities or functions are impaired, or even

when only one is impaired." *Id.* Also, it is not necessary to be "totally precluded from

performing an activity to have a marked limitation, as long as the degree of limitation seriously

interferes with [the claimant's] ability to function independently, appropriately, and effectively.

The term 'marked' does not imply that you must be confined to bed, hospitalized, or in a nursing

home." *Id.*

A claimant has "marked" limitation in activities of daily living, such as doing household

chores, grooming and hygiene, using a post office, taking public transportation, or paying bills, if

the claimant has "a serious limitation in [the] ability to maintain a household or take public

transportation because of symptoms, such as pain, severe fatigue, anxiety, or difficulty

concentrating, caused by [the claimant's] immune system disorder (including manifestations of

the disorder) or its treatment, even if [the claimant] is able to perform some self-care activities."

Listing 14.00I.6.

Completing tasks in a timely manner "involves the ability to sustain concentration,

persistence, or pace to permit timely completion of tasks commonly found in work settings."

Listing 14.00I.8. A claimant has a "marked" limitation in completing tasks if the claimant has "a

serious limitation in [the] ability to sustain concentration or pace adequate to complete work-

related tasks because of symptoms, such as pain, severe fatigue, anxiety, or difficulty

concentrating, caused by [the claimant's] immune system disorder (including manifestations of

the disorder) or its treatment, even if [the claimant] is able to do some routine activities of daily living." *Id.*

In concluding that plaintiff's fibromyalgia did not meet a listing, the ALJ relied on the opinion of Jack LeBeau, M.D., the medical expert who testified at plaintiff's most recent administrative hearing. Dr. LeBeau recognized that plaintiff had been diagnosed with fibromyalgia, but opined, "Is it?  I don't know. It could be." Tr. 712. He observed that a fibromyalgia diagnosis is not usually made "when there's a collagen vascular or autoimmune process going on in the body." *Id.* Dr. LeBeau further explained why plaintiff's fibromyalgia diagnosis was called into question:

> Usually, you favor whatever it is, like rheumatoid arthritis or something like that.
> You can call that fibromyalgia. So, I didn't know where to run with that, you
> know. Are you gonna accept the diagnosis which is okay. I mean, it's not –
> fibromyalgia's a pretty common problem and if it's – there are many treatments
> for it. It's usually not terribly difficult to handle. On the other hand, are we
> missing something here? Iritis, by the way, iritis is a common symptom of
> autoimmune disease. So, she's got that and she's got these afflictions [phonetic].
> But I think, you know, the record is the record and it ends right there. And I can't
> do anything else.
> . . . What I would call this event, . . . is just differentiated autoimmune disease.
> [INAUDIBLE] something, that's another name. But it does not meet the criteria
> for autoimmune diseases.
> . . . The anti-nuclear antibody, I think I can give you a quote on that. It's 2F, Page
> 5 [Tr. 258]. Was said to be 1 to 160, which is pretty decent titer. That's not
> borderline or something like that.
> . . . I don't really have any additional things. I think we just have to leave it that
> we have someone [INAUDIBLE] disease here and that she may also have
> fibromyalgia.

Tr. 712-13.

When asked whether plaintiff had any impairment, combined or separately, that met or equaled a listing, Dr. LeBeau answered in the negative:

> No, I don't think so. You know, probably the most pressing one would be the
> fibromyalgia or the symptoms that it causes. And, again, that's a highly treatable
> thing. It's not some puzzle or something like that. There are many, many

treatments for it. In a way, it's almost not good because sometimes it's better to have one treatment for a disease than 30, if you can see what I mean.

Tr. 714. The ALJ asked whether plaintiff met Listing 14.09D, and the doctor responded:

I don't see that severity. The other thing is that if you want to talk about joint inflammation, then you're not talking about fibromyalgia. . . . So, that's sort of a very sharp edge that runs through that. All of a sudden, we're talking about autoimmune disease and iritis, and myalgia, that sort of stuff, but without joint inflammation.

Tr. 714-15.

The ALJ summarized Dr. LeBeau's opinion, stating that the doctor "affirm[ed] that the level of severity required in listing 14.09D was not met or equaled in this case, despite acknowledging a possibly undiagnosed autoimmune disorder." Tr. 674. The ALJ then explained why plaintiff did not have marked limitations in at least two areas:

[S]upport for at least two recurring constitutional symptoms is minimal at best, as the claimant often reports no constitutional symptoms and only reports fatigue on a semi-regular basis (*See, e.g.*, Exs. 17F/1, 4; 18F/1-2, 8, 13; 19F/40; 20F/53, 59; 23F/7). Moreover, marked limitations in activities of daily living, maintaining social functioning, or completing tasks in a timely manner due to deficient concentration, persistence, or pace are not supported. Essentially the only records addressing the claimant's concentration, persistence, or pace are two treating source statements alleging that the claimant's symptoms would frequently impact her ability to concentrate/maintain attention (Exs. 9F; 25F). However, given that this suggested limitation is based on pain, the claimant's presentation at most examinations in no acute or apparent distress calls this suggested limitation in to serious question (*See* Exs. 6F/1; 7F/5; 15F/4, 7; 17F/2, 5; 18F/3, 9, 14; 19F/1, 42; 20F/14, 18, 21, 29, 34, 45, 54, 63; 23F/21, 27, 40, 46, 63, 75, 77; 21F/2, 5, 8, 11, 14, 17, 20). The claimant has alleged being very limited in her activities of daily living, yet this is also based on allegations of significant pain, which is inconsistent with the claimant's presentation on examinations, and inconsistent with the medical expert's testimony that the claimant's conditions, while chronic, are very treatable. There is no support in the record for marked social functioning limitations.

Tr. 674.

Plaintiff argues the ALJ erred because she in fact has had repeated manifestations of severe fatigue and malaise accompanied by marked limitations in not just one but two areas:

activities of daily living and completing tasks in a timely manner due to deficiencies in

concentration, persistence, or pace. Pl. Br. 12, ECF 16. Plaintiff claims this is supported by the

opinions of her treating family nurse practitioner, Stephen Joslin, and treating physician, Dr.

Wendell Heidinger. *Id*. But where, as here, "the evidence is susceptible to more than one rational

interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of Soc. Sec.*

*Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).[2] Accordingly, the ALJ's ruling on step three will not

be disturbed by this court.

## II.    Subjective Symptom Testimony

### A.    Legal Standard

The Ninth Circuit has developed a two-step process for evaluating a claimant's testimony

about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d

586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented

objective medical evidence of an underlying impairment which could reasonably be expected to

---

[2] The Commissioner argues that, under Social Security Ruling 17-2p, "for an impairment to medically equal a listing, the record must contain a prior administrative finding, a medical expert finding, or a report from the Appeals Council medical staff to that effect." Def. Br. 8, EFC 18 (citing SSR 17-2p, *available at* 2017 WL 3928306, at *3). The Commissioner argues "the record showed the opposite: medical expert Dr. LeBeau concluded that [plaintiff's] fibromyalgia did not equal Listing 14.09D." *Id.* But SSR 17-2p actually states that ALJs are to "determine whether an individual's impairment(s) meets or medically equals a listing at step 3 of the sequential evaluation process," and "to assist in evaluating this issue, [the ALJ] *may* ask for and consider evidence from medical experts (ME) about the individual's impairment(s), such as the nature and severity of the impairment(s)." SSR 17-2p, *available at* 2017 WL 3928306, at *3 (emphasis added). The rule does not limit the ALJ's consideration of the evidence in the way the Commissioner argues. Rather, "[a]t step three, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude gainful work," and "[i]f the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990); *see also Ceja Johnson v. Astrue*, No. 6:11-cv-6372-AA, 2013 WL 1296240, at *5 (D. Or. Mar. 22, 2013) ("It is well settled that step three determinations are based on the medical evidence.").

produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (quotation marks and citations omitted). When doing so, the claimant "'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

"Second, if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

Effective March 28, 2016, the Commissioner superseded SSR 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminated the referenced to "credibility," clarified that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case

record." *Id.* at *4. Because plaintiff's second and third hearing took place after SSR 16-3p was enacted, it applies to this case.

### B.    Function Report

As relayed in this court's previous opinion,

Plaintiff completed a function report on December 3, 2012. Tr. 212-19. She stated that she lived with a friend and was raising her four-year-old granddaughter. Tr. 212. Plaintiff explained that her neck and shoulders "hurt continually," her hands seemed weak, she had many headaches recently, her entire body hurts after lifting objects, she had hip and back pain, and that some days were better than others. *Id.*

Plaintiff engaged in the following daily activities: making beds, preparing breakfast, doing dishes, feeding her dog, brushing her teeth, icing her neck and back, preparing dinners, and completing "the daily chores that need to be done." Tr. 213. She also fed, clothed, and bathed her granddaughter, combed her granddaughter's hair, and transported her granddaughter to and from daycare. Tr. 213-14.

Although plaintiff prepared meals daily, it took more time than in the past. Tr. 214. And while she cleaned her home and did laundry, that also took more time than before. Tr. 215. Sometimes plaintiff "mow[ed]," but she "suffer[ed] afterwards." *Id.* In general, she did not want to do house or yard work because her body suffered that night and usually for the next day or two.

Plaintiff reported difficulty sleeping because she hurt all over and it was hard to get comfortable. Tr. 213. She usually went two to three days on limited sleep and then took something to help her sleep. *Id.* Sometimes her arms, hands, and legs ached so badly, she wanted to cry. *Id.* Her condition required her to sit down to put on socks and pants. Tr. 214.

Plaintiff usually went outside daily, and shopped for groceries twice weekly. Tr. 215. She continued to have hobbies, including watching television, camping, swimming, and gardening. Tr. 216. She reported social activities, including speaking to her parents over the phone, emailing, occasional trips to the movies with a friend, and occasional babysitting of an infant. Tr. 216-17. She described herself as a "very social person." Tr. 217.

Plaintiff indicated she usually finished what she began, and was "good" at following written and spoken instructions and getting along with authority figures. *Id.* In her concluding remarks, plaintiff asserted that she found it difficult to ask for help because she previously was a very independent person. Tr. 219. She also described herself as a "type A" personality who did more activity than she should. *Id.*

*Ellen O. v. Comm'r Soc. Sec. Admin.*, No. 1:19-cv-00433-YY, 2020 WL 1923159, at *2-3 (D. Or. Apr. 21, 2020).

### C.    Hearing Testimony

Plaintiff's testimony at her second hearing on November 13, 2018, was summarized in this court's prior opinion as well:

> She testified that she had been raising her granddaughter since 2009. Tr. 336. Plaintiff also traveled to Grants Pass twice a week to provide care and transportation for her mother. Tr. 337-38. Plaintiff's mother paid her for this work, which took approximately eight hours per week. *Id.* Pain symptoms, however, made it "harder and harder" for plaintiff to help her mother. Tr. 337.
>
> Plaintiff took Cymbalta daily, but did not take other medication unless she "absolutely" had to and only at night. Tr. 344. She had access to lorazepam, Flexeril, and Tylenol PM. *Id.* Plaintiff's irritable bowel syndrome was manageable with non-prescription medication she obtained from Costco. Tr. 347.
>
> Plaintiff described that her fibromyalgia symptoms, including aches and pains, were worsening, and she was constantly fatigued. Tr. 345. When she was employed, she never missed work due to her pain, although "[s]ometimes it was hard to focus." *Id.*
>
> When plaintiff was able to get a good night's sleep, her fibromyalgia symptoms were not as bad. Tr. 346. Plaintiff also was prone to headaches or migraines when she did not get proper sleep and because of stress. Tr. 337-38.
>
> Plaintiff's back problems, including a history of surgery, made it difficult to sit or stand for long periods of time. Tr. 346-47. To manage her pain, plaintiff used ibuprofen, heating, and icing. Tr. 350. Soaking in warm baths also helped her back pain. Tr. 347.

*Id.* at *3.

At her most recent hearing, plaintiff's testimony was consistent with her previous testimony. She explained that she is in a lot of pain "all the time," and that she "hate[s] taking the pills," but she will take them when she "absolutely" has to. Tr. 720. She makes sure to take them at home because her medications make her "sleepy and groggy." *Id.* Plaintiff testified that she cannot walk for very long, and when she makes dinner, she needs to take a break because it is

too painful. Tr. 721. She testified that she drops things often. Tr. 723. However, she is able to

treat her migraines with the prescribed medication. *Id.* Her granddaughter, who is now thirteen,

still lives with her. *Id.*

### D.    Analysis

The ALJ discredited plaintiff's symptom testimony for two reasons: first, because

plaintiff's testimony was "inconsistent with the claimant's not wanting to take medication" and

her medical providers consistently found her in "no acute distress," and second, because the

testimony was inconsistent with plaintiff's daily activities. Tr. 677. Neither reason is supported

by substantial evidence in the record.

### 1.    Prescriptions and "No Acute Distress"

A claimant must follow recommended treatment that would restore workplace ability, 20

C.F.R. §§ 404.1530(a); 416.930(a), and treatment history is a relevant factor in assessing

symptom testimony, 20 C.F.R. §§ 404. 1529(c)(3)(v); 416.929(c)(3)(v). The ALJ may properly

rely upon "unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (quoting

*Tommasetti*, 533 F.3d at 1039).

Throughout the medical record, plaintiff was consistent with her reports to her medical

providers that her prescribed medications caused intolerable side effects. *See, e.g.*, Tr. 269 (Nov.

6, 2012, tried Trazadone, but is foggy); 265 (Jan. 31, 2013, sensitive to erythromycin, causes "GI

upset," and Vicodin, causes itching); 295 (Jan. 15, 2014, "she took a Percocet which she

'hates'"); 295 (Feb. 24, 2014, medications make her "too sleepy"); 292 (June 3, 2014, "not fond

of meds and recently stopped neurontin after a week because it upset her stomach"); 586 (Sept.

11, 2017, oxycodone causes itching). When a claimant has a good reason for not following a

recommended treatment, such treatment cannot be used to undermine a claimant's credibility. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (rejecting ALJ's conclusion that claimant was not credible because claimant "testified that he does not take other pain medication because of adverse side effects"). Plaintiff's decision to take pain medications with adverse side effects only when "absolutely" necessary is not a clear and convincing reason supported by substantial evidence to reject her pain testimony.

Similarly, the ALJ incorrectly relied on medical providers' reports that plaintiff did not appear in "acute distress" as a clear and convincing reason to discredit plaintiff's testimony. In an unpublished decision, the Ninth Circuit explained that "[o]ne who suffers from fibromyalgia, a condition marked by 'chronic pain through the body,' is not necessarily in 'acute distress.' Without more, that term does not constitute an objective medical finding that is inconsistent with sever fibromyalgia." *Reinertson v. Barnhart*, 127 F. App'x 285, 290 n.2 (9th Cir. 2005) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)); *see also M.D.B. v. Berryhill*, No. 19-cv-02435-LB, 2020 WL 4051863 at *12 (N.D. Cal. July 20, 2020) (citing *Reinertson*, 127 F. App'x at 290) (rejecting ALJ's reliance on "no acute distress" when the ALJ offered no explanation as to why that description undermined evidence); *see also Hernandez-Deveraux v. Astrue*, 614 F. Supp. 2d 1125, 1150 (D. Or. 2009) (finding that "no acute distress" is "not a clear and convincing reason for doubting [claimant's] subjective statements since these same physicians did not conclude that these observations conflicted with their diagnoses"). Although the opinion is unpublished and not binding precedent, its reasoning is persuasive.

### 2.    Activities of Daily Living

An ALJ may discount a claimant's symptom testimony if it is inconsistent with the claimant's activities of daily living or if the claimant's participation in everyday activities

indicates capacities that are transferrable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina*, 674 F.3d at 1112-13. A claimant need not, however, be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ found that plaintiff's report of "playing on her iPad through the day" and her "ability to cook meals and drive" were inconsistent with her reports of her hands aching and dropping items. Tr. 686. The ALJ also concluded that plaintiff's "ability to assist her aging parents during the relevant period, including helping bathe her father, and her ability through 2019 to also assist her mother with errands and appointments is further indication of an ability to sustain light-level activities." Tr. 686.

Plaintiff's daily living activities do not contradict her subjective symptom testimony. The ALJ offered no explanation as to how plaintiff's er activities of caring for her grandchild and assisting her aging parents contradicted her testimony that she is in constant pain, needs to sit down often, and is constantly tired. Moreover, the ALJ's cited activities are not transferable to a work setting requiring eight-hour days, five days a week. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.") (citation and quotation omitted).

Finally, other than one fleeting reference noted by her medical provider that plaintiff "bath[ed her] dad every other day," there is no information about what such assistance to her aging parents entailed, other than driving her mother to appointments and the store. *See Trevizo*, 871 F.3d at 682 ("[T]here is almost no information in the record about [the claimant's] childcare

activities; the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitation.").

For all of the reasons above, the ALJ did not provide legally sufficient reasons to discount plaintiff's subjective symptom testimony.

### III.    Medical Opinion Testimony

This court applies the regulations regarding the ALJ's evaluation of medical opinion evidence in effect at the time plaintiff filed her application. Under those regulations, the ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.[3] *Orn*, 495 F.3d at 632.

"Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record." *Id*. (treating physician) (quoting *Reddick*, 157 F.3d at 725); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). "Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Orn*, 495 F.3d at 632 (quoting *Reddick*, 157 F.3d at 725); *see also Widmark*, 454 F.3d at 1066.

---

[3] For claims filed on or after March 27, 2017, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). However, these regulations do not apply to this case because plaintiff filed for benefits in 2015.

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.*

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (citation and quotation omitted). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan*, 169 F.3d at 601-02.

### A.    Dr. Wendell Heidinger

Dr. Heidinger was one of plaintiff's treating physicians and saw plaintiff from September 2017 through the end of her medical record in January 2021. Tr. 586, 1062. Dr. Heidinger gave two medical opinions, one in 2015 and the other in 2021. Tr. 469, 1062. In her previous opinion, the ALJ found Dr. Heidinger's 2015 opinion unpersuasive because he did not start treating plaintiff until 2017. This court upheld that reasoning and does so again here. *See Ellen O.*, 2020 WL 1923159, at *6 ("[T]he ALJ was not required to accept a treating physician's opinion that was inadequately supported by clinical findings[.]").

In his 2021 opinion, Dr. Heidinger opined that plaintiff could not sit or stand for more than five minutes without needing to change positions and could sit and stand/walk for two hours in an eight-hour workday. Tr. 1064. He also opined that she would miss work more than three times a month due to her fibromyalgia. Tr. 1065.

The ALJ discounted Dr. Heidinger's 2021 opinion because she found it inconsistent with (1) plaintiff's refusal to take medication, (2) plaintiff's daily living activities, and (3) the medical record. For the reasons explained above, plaintiff's reluctance to take pain medications that caused adverse side effects and her activities of daily living are not sufficient reasons supported by substantial evidence to discredit Dr. Heidinger's opinion.

The ALJ's third reason, that she found "it significant that the claimant consistently presents in no acute distress on examination, with very few exceptions, despite her alleged chronic pain and no specialized treatment for her fibromyalgia," Tr. 679, is also insufficient. As explained above, "[o]ne who suffers from fibromyalgia, a condition marked by 'chronic pain through the body,' is not necessarily in 'acute distress.' Without more, that term does not constitute an objective medical finding that is inconsistent with sever fibromyalgia." *Reinertson*, 127 F. App'x at 290 n.2 (quoting *Benecke*, 379 F.3d at 590); *Hernandez-Deveraux*, 614 F. Supp. 2d at 115 (finding that "no acute distress" is "not a clear and convincing reason for doubting [claimant's] subjective statements since these same physicians did not conclude that these observations conflicted with their diagnoses"). Such reasons to reject Dr. Heidinger's opinion are not supported by substantial evidence and are harmful error.

## B.    FNP Stephen Joslin

Family nurse practitioner Stephen Joslin saw plaintiff since January 2012. Tr. 271. Although nurse practitioners are not "acceptable medical sources" under the old regulations, they can be considered as a "non-acceptable medical source." 20 C.F.R. §§ 404.1502(a)(6)-(8), 416.902(a)(6)-(8). Notably, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source[.]'" SSR

06-03p, *available at* 2006 WL 2329939, at *5; *see Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) ("The Social Security regulations provide an outdated view that consider a nurse practitioner as an 'other source.'").

The ALJ rejected FNP Joslin's medical opinion because she found it internally inconsistent and inconsistent with the "no signs of distress, claimant's hesitancy to take medication and no special treatment for her fibromyalgia." Tr. 680. On the form, FNP Joslin was asked, "To what degree can your patient tolerate work stress?", to which he checked the option that indicated plaintiff was "[c]apable of low stress jobs." Tr. 290. The ALJ found this observation to be inconsistent with Joslin's opinion that plaintiff would miss more than four days per month due to her impairments. Tr. 680. But there is no inconsistency between these two statements. A person may be capable of handling "low stress" situations, and still not be able to work a regular, eight-hour workday due to pain; such findings are not mutually exclusive. This alleged inconsistency is not a valid basis for rejecting FNP Joslin's opinion. As explained earlier, the ALJ's reliance on plaintiff's hesitancy to take medications with side effects and not being in "acute distress" are not clear and convincing reasons supported by substantial evidence to discount the medical opinion.

Finally, to the extent the ALJ considered that "no special treatment for fibromyalgia" meant plaintiff received only conservative treatment for her pain, such an argument is unavailing. Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra*, 481 F.3d at 750-51. But such treatment cannot be considered conservative where no other treatment options exist. *See Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none existed."). The

only time plaintiff was offered some treatment for her fibromyalgia other than pain medications was in June of 2018 when she wanted to explore frequency-specific microcurrent therapy, but she did "not have the finances to pursue it." Tr. 635. The ALJ's reasons for discrediting FNP Joslin's opinion were not supported by substantial evidence and constitute harmful error.

## IV.    Step Four

Finally, plaintiff argues that the ALJ erred at step four because her RFC is not consistent with the finding that she can do her past work as an administrative clerk. At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can perform past relevant work, she is not disabled. The "claimant has the burden to prove that [s]he cannot perform [her] past relevant work 'either as actually performed or as generally performed in the national economy.'" *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) (quoting *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)).

Here, the ALJ found that plaintiff could perform her past relevant work as an administrative clerk and that she could perform the job "as generally performed." Tr. 681. Because the ALJ improperly rejected plaintiff's symptom testimony and the medical opinions discussed above, the ALJ did not consider the limitations captured by the improperly rejected evidence when making her step four finding. *See Lester*, 81 F.3d at 834 (holding that when an ALJ improperly rejects an uncontradicted opinion of an examining physician, those opinions are credited as true as a matter of law).

## V.    Remedy

When a court determines the Commissioner erred in some respect in deciding to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id*. at 1021.

Here, the first and second requisites of the *Garrison* test is met. As discussed above, the ALJ improperly rejected plaintiff's subjective symptom testimony and the medical opinions of Dr. Heidinger and FNP Joslin. Moreover, the record is fully developed, and further proceedings would serve no useful purpose.

If the improperly discredited evidence is credited as true, the ALJ would be required to find plaintiff disabled on remand. FNP Joslin opined that plaintiff would miss more than four days per month due to her impairments, Tr. 290, and Dr. Heidinger opined she would miss work more than three times a month, Tr. 1065. At plaintiff's last hearing, the vocational expert testified that missing more than two days of work per month would "preclude all competitive work." Tr. 726. Accordingly, remand for benefits is appropriate. *See Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as

described in the improperly discredited testimony . . . would be unable to perform competitive employment").

The Commissioner argues that the appropriate remedy is to remand for further proceedings. This would allow the ALJ to reevaluate plaintiff's application for a *fourth* time. The ALJ has now had three opportunities to evaluate plaintiff's case, and it has been pending for over nine years. *See Garrison*, 759 F.3d at 1021 ("Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that and for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit as true analysis."); *Tanya P. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-cv-00158-HZ, 2019 WL 4567580, at *11 (D. Or. Sept. 20, 2019) (remanding for payment of benefits where "there have already been multiple hearings at the agency level and the Appeals Council has already sent the issue back to the ALJ once for additional analysis"); *Shawn G. v. Kijakazi*, No. 3:20-cv-57-SI, 2021 WL 3683878, at *5 (D. Or. Aug. 19, 2021) ("Because the ALJ twice improperly discredited [a medical source's] opinion and made the same errors when reevaluating [his] opinion that the Court identified during the Court's review of the ALJ's original decision, the Court does not believe that giving the ALJ a third opportunity to evaluate [that provider's] testimony will serve a useful purpose."); *Michael P. v. Berryhill*, No. 3:18-cv-00902-YY, 2019 WL 3210096, at *3 ("Plaintiff . . . has spent the past eight years locked in a perpetual cycle of ALJ errors and remands. The caselaw in this circuit does not support remanding this case to give the Commissioner another opportunity to meet its burden.") (citing *Benecke*, 379 F.3d at 595 and *Rustamova v. Colvin*, 111 F. Supp. 3d 1156, 1165 (D. Or. 2015)); *Frank v. Berryhill*, No. 3:16-

cv-02350-HZ, 2018 WL 1710442, at *5 (D. Or. Apr. 5, 2018) (holding that "[f]urther inquiry would not serve any purpose" where the Appeals Council had previously remanded the case to the ALJ); *cf. Rustamova*, 111 F. Supp. 3d at 1165 ("[A]llowing the Commissioner a third opportunity to try to meet her burden at step five would create the very 'heads we win; tails, let's play again' system of disability benefits adjudication' that the Ninth Circuit has repeatedly cautioned against.") (quoting *Benecke*, 379 F.3d at 595). Therefore, this case shall be remanded for immediate award of benefits.

## ORDER

The Commissioner's decision is REVERSED and REMANDED for immediate award of benefits.

DATED July 31, 2023.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

23 – OPINION AND ORDER